EBLING v. SECOND AVE. R. CO.

(Supreme Court, Appellate Division, First Department.  April 29, 1901.)

STREET RAILROADS—NEGLIGENCE—ACCIDENT WHILE BOARDING CAR—CONFLICT-
ING EVIDENCE.

Plaintiff testified that he signaled defendant's car to stop, and, though
he did not see the driver look at him, the car slowed down nearly to a
standstill, so that he took hold of a handle, put his foot on the step, and
attempted to board it, but that just as he did so the conductor gave two
short blasts of his whistle, as a signal to go ahead, and the car started
with a jerk, throwing him on the track, so that the car ran over his leg.
Six witnesses for defendant, four of whom were disinterested, testified
that the car only slowed down partially for a crossing; that plaintiff
tried to board the car while it was moving, and approached it from a
point back of the car, out of the range of vision of the driver;. and that
the conductor did not give the signal to go ahead, but blew one blast, to
stop the car, when he saw plaintiff fall. *Held* to show, as a matter of
law, that plaintiff's .injury resulted from his own negligence, so that the
complaint was properly dismissed at the close of the evidence.

Ingraham and Rumsey, JJ., dissenting.

Appeal from trial term, New York county.

Action by Charles Ebling against the Second Avenue Railroad
Company.  From a judgment dismissing the complaint at the close
of the trial, plaintiff appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY,
O'BRIEN, and INGRAHAM, JJ.

Charles Steckler, for appellant.

Charles F. Brown, for respondent.

O'BRIEN, J.  We think that the dismissal of the complaint in this
case should be affirmed, upon the ground that the preponderance of
evidence is that the plaintiff's injury was the result of his own act
in running after and attempting to step upon the car while it was
in motion.  The plaintiff was the only witness in his own behalf
as to the manner in which the accident occurred, and he was op-
posed and contradicted by no less than six witnesses, four of whom
must be presumed to have been disinterested.  The plaintiff's ver-
sion of the accident is that he was standing on the southwest corner
of 101st street and 2d avenue for about a minute, awaiting a south-
bound car; that the defendant's open horse car came along, and when
it was about five feet above the north crossing he threw up his hands
to signal the driver to stop;. that the driver was looking straight
ahead, but at that moment he turned the brake and slowed down
the car so that it came nearly to a standstill at the south cross-
walk; that he did not at any time see the driver look at him; that
as the car came along he put his right foot on the sideboard up near
the front of the car, and with the right hand took hold of the post
or handle; that he heard the conductor give a signal to start, and
then the driver started the car ahead with a jerk, and he was
thrown off upon his back, and the car ran over his leg.  He denies
that at any time he told any one that the accident happened through
his own fault.  On the part of the defendant, the driver admits that

he slowed down the car as he came to and crossed 101st street, but avers that he did not see the plaintiff at all, and the plaintiff had not given him any signal; that what first attracted his attention was a single long whistle from the conductor, and he had received no signal to start ahead; that the plaintiff, after the accident, said it was his own fault. The driver further stated that, if he had seen a passenger signal from the south side of the street, he would have put on the brake. The conductor says that he was on the west side of the car at the time, and first saw the plaintiff running across the street diagonally from the north to the south side; that he did not give any signal to start the car, though it had slowed up a little going across the street; that the driver was "looking out and minding his business," and it was a rule of the company to slow up and look for passengers at crossings; that there was no jolt or jerk to the car, but the man fell while he was attempting to get on, and the car ran over him, and thereafter he said it was his own fault. Another witness testified for the defendant that he was sitting at the window of his room on the second story of the house, at the southwest corner of 101st street and 2d avenue, and saw the plaintiff run towards the car and try to get on and slip and fall; that he heard but one whistle blown, and the car did not jerk; that the plaintiff thereafter said it was his own fault. A passenger on the car testified that he first saw the plaintiff near the south crosswalk as he was attempting to get on, and he fell right down, and before that time there had been no signal given by the conductor, and the car did not jerk; that the conductor gave the signal the moment the man fell. An ex police officer testified that he was on duty in the vicinity at the time of the accident, and saw the plaintiff after the accident, and he said that it was his own fault. Michael J. Slattery testified: That he was standing on the west side of the avenue, facing north, watching some boys, and about 10 feet south of 101st street, at the time of the accident. That he saw the car coming down, and "as the center of the car about passed me the plaintiff in this case made a rush right across at the north side of me, and ran diagonally across the street to jump on the car, and as he jumped on the car he made an attempt with his left hand, as I should say, to grasp the third stanchion from the forward end of the car, and raise his left foot to get on the footboard, and by so doing he slipped and fell. * * * I heard the conductor blow the whistle,—a long whistle. I made a spring across the street, and raised him in my arms. * * * I did not see this plaintiff, before he ran out towards the car, give any signal to that driver of any kind. He did not give no intimation whatever, but ran right across from my side. I saw him when he left the sidewalk. * * * There was no signal blown to start that car while that car was passing over 101st street or passing me." That he did not see anything on the part of the driver to have the car go unusually slow, though he was still looking north as the car reached the south crosswalk. That the plaintiff had said thereafter that it was his own fault. Upon this testimony, I think that the complaint should have been dismissed, for the reason that the preponderance of evidence shows

that the plaintiff ran from a point back of the car, so that he was not in the vision of the driver, and, as he was attempting to board the car while it was in motion, fell, not from a starting or jerking of the car, but because he slipped.

The judgment should therefore be affirmed, with costs.

VAN BRUNT, P. J., and HATCH, J., concur.

INGRAHAM, J. (dissenting). The only question presented upon this appeal is whether, upon the whole testimony, there was evidence which would justify a finding of the jury that the defendant was negligent. The plaintiff testified that he stood on the south crosswalk at the corner of 101st street and 2d avenue; that he signaled a car going south to stop; that after he made this signal the driver of the car put on the brake, and the car, which was an open one, almost stopped as it got to the crosswalk on which the plaintiff stood; that it was then going very slow, and the plaintiff put his right foot on the side step of the car, and took hold of a stanchion to get on; that as his right foot was on the car he heard the conductor give a signal, and then the car started; that the signal consisted of the conductor's blowing a whistle twice; that this signal was given two or three seconds before the plaintiff fell. The plaintiff then rested, and the defendant called the driver of the car, who testified that he did not see the plaintiff; that as the car crossed 101st street he reduced the speed of his car to about four miles an hour; that after crossing 101st street there was a long whistle from the conductor, which means to stop instantly; that before that he had no signal from the conductor between the north side of 101st street and the place where he stopped; that he then at once stopped the car, and, looking back, saw the plaintiff lying with his leg on the rail; that one long whistle is the signal to stop the car at once; and that two whistles is the signal to go ahead. The conductor of the car testified that he first saw the plaintiff running from the north side of the street to the south crosswalk; that he made a grab for the car, but missed it and fell; that the conductor then blew a whistle, and the car then came to a stop in about 10 feet. One of the passengers on the car testified that there was no whistle sounded by the conductor until after the plaintiff fell, when the conductor sounded a long whistle, and the car came to a stop. Upon cross-examination this witness testified: That the conductor gave the whistle the moment the man fell. "The man fell, and then I heard a whistle right away." Another witness, who was in the street, testified: That he saw the plaintiff run forward and grab the third stanchion from the forward end of the car, and raise his leg to get on the footboard, and in doing so he slipped and fell. "As soon as he grasped onto the car, I heard the whistle from the conductor," and the car stopped in about 10 feet. That the only whistle that was blown was the long whistle. Upon cross-examination this witness testified:

"When he [plaintiff] grabbed this stanchion with the two hands and tried to get his foot on the car, the conductor blew the whistle immediately.

The moment he put his hands on the stanchion, I heard a whistle given about that time, and while he was in the act of putting out his hand I heard the conductor blow a whistle. At that time the man was in full view of me, standing up."

The court dismissed the complaint upon the ground that on the whole evidence the jury would not be justified in inferring that this driver was aware, before the attempt to board the car was made, of the attempt being made, and, that being so, that there would be a failure of evidence as to the negligence of the defendant. If upon this evidence the jury would not have been justified in saying that the driver saw the plaintiff's signal, or had knowledge that he desired to get upon the car, we do not think that it followed that there was no evidence of the defendant's negligence. There was evidence of two distinct conditions at the time of the accident. That testified to by the driver and conductor was that as the car approached the south corner of 101st street the speed was slackened to about four miles an hour, when the plaintiff rushed forward towards the car and made an attempt to get on while it was moving, and, slipping, fell under the car and sustained the injury, and that it was only after the plaintiff attempted to get upon the car and fell that the conductor signaled the driver, by one long whistle, to stop the car. If this was the condition that actually existed, it is quite plain that there was no evidence of the defendant's negligence, but that the accident happened solely because of the negligent act of the plaintiff in attempting to board a moving car. There was, however, evidence of another condition, which I think the jury would have been justified in finding existed, and that is that the plaintiff, standing on the southerly crossing of 101st street, motioned the car to stop; that the car slowed down, and almost came to a stop as it reached the crosswalk, and that the plaintiff attempted then to get on the car, but the conductor signaled the car to go ahead, and in response to such signal the brake was let off and the car started forward; and that the starting of the car caused the plaintiff to fall. And, if this condition existed, there was then evidence from which the jury could find that the defendant was guilty of negligence; the negligence being in starting the car while the plaintiff was engaged in getting aboard. Undoubtedly, if the plaintiff had attempted to get aboard this moving car, and had slipped in doing so, the defendant would not have been responsible. The responsibility of the defendant, if any, would arise because of the fact that while the plaintiff was getting on the car the conductor signaled for the car to start, and that, in consequence of the starting of the car before the plaintiff had an opportunity to get on board, the accident happened. This question whether or not the conductor did blow the whistle which was a signal to start the car, and in consequence thereof the car did start, should, I think, have been submitted to the jury. It is true that the fact that two whistles were blown before the plaintiff fell is based solely upon the testimony of the plaintiff. He is the only witness who testified that two whistles were blown. There was testimony by a witness called by the defendant that, when the plaintiff seized hold of the

69 N.Y.S.—70

stanchion, and attempted to get on the car, the conductor immediately blew the whistle, and that was before the plaintiff fell. The question thus resolved itself into whether or not at this time when the conductor blew the whistle there was one blast or two, as one blast would be a signal to stop, and two to go ahead. The defendant's witnesses testified that but one blast of the whistle was blown, and that the car did not start ahead, but that immediately after the whistle was blown the car came to a stop. The plaintiff, on the contrary, testified that two were blown, and that the car started ahead, and that the result of such starting was to throw him from the car. And that question, I think, was one for the jury. It may be said that the evidence preponderated in favor of the defendant, but I do not think that there was such a decided preponderance as justified the court in dismissing the complaint. I therefore think that the judgment should be reversed.

RUMSEY, J., concurs.